```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
 2                     ATLANTA DIVISION

 3   UNITED STATES OF AMERICA,      )
                                    )
 4               Plaintiff,         )  CRIMINAL ACTION FILE
            v.                      )  NO. 1:19-CR-00022-WMR-CCB-1
 5                                  )
     KEVIN L. KIRTON,               )
 6                                  )  CHANGE OF PLEA
                 Defendant.         )
 7   _____)

 8   -------------------------------------------------------------

 9         BEFORE THE HONORABLE WILLAM M. RAY, II
                 TRANSCRIPT OF PROCEEDINGS
10                    JUNE 17, 2021

11   -------------------------------------------------------------

12   APPEARANCES:

13   For the Plaintiff:        SAMIR KAUSHAL
                               Office of the U.S. Attorney
14                             Northern District of Georgia
                               600 United States Courthouse
15                             75 Ted Turner Drive SW
                               Atlanta, Georgia  30303
16
     For the Defendant:        EMILY STRONGWATER
17                             Attorney at Law
                               Strongwater & Associates
18                             1360 Peachtree Street, Ste 910
                               Atlanta, Georgia  30324
19

20        Proceedings recorded by mechanical stenography
            and computer-aided transcript produced by
21

22             WYNETTE C. BLATHERS, RMR, CRR
                   Official Court Reporter
23                 1714 U.S. Courthouse
                   75 Ted Turner Drive, SW
24                 Atlanta, Georgia  30303
                       (404) 215-1547
25
```

```
1                    Monday Afternoon Session
2                       June 7, 2021
3                        4:00 p.m.
4                          -  -  -
5                   P R O C E E D I N G S
6          THE COURT:  We're ready?
7          MR. KAUSHAL:  Yes, your Honor.
8          THE COURT:  All right.  Good afternoon.  Thank you
9   all for being patient.  By the way, I'm sorry that we were an
10  hour late getting to you.  This is Case No. 19-CR-22 out of
11  the Northern District of Georgia, Atlanta Division.  It's
12  United States v. Kevin Kirton.  Kirton?  Is that how you say
13  it, sir?
14          THE DEFENDANT:  Kirton.
15          THE COURT:  My understanding -- well, let me first
16  say that the defendant is represented by Emily Strongwater,
17  and the prosecution is represented by Samir Kaushal.
18          MR. KAUSHAL:  Yes, your Honor.
19          THE COURT:  And Zachary Howard?  I don't see a
20  Zachary.  Is there a Zachary?
21          MR. KAUSHAL:  There is a Zachary Howard.  He is not
22  here with me today, your Honor.
23          THE COURT:  Okay.  All right.  I didn't think y'all
24  were Zachary.  Y'all don't look like a Zachary.
25          My understanding, Ms. Strongwater, is your client
```

1 | wishes to enter a -- change his plea from guilty -- from not
2 | guilty to guilty today; is that correct?
3 |       MS. STRONGWATER:  That's correct, your Honor.
4 |       THE COURT:  Mr. Kaushal, if there is a plea
5 | agreement, could you have -- could you verify counsel and the
6 | defendant's signature on the plea agreement?
7 |       MR. KAUSHAL:  Yes, your Honor, I will do that now.
8 | And, your Honor, I'm going to ask a few more questions.  Just
9 | to give you some background, there was a hearing that we had
10 | back almost over a year ago where the defendant stated that he
11 | did not want to enter into a plea, he did not want to plead
12 | guilty, and that he was rejecting this particular plea
13 | agreement.  So I'm going to ask the defendant some questions
14 | about that as well, your Honor, just to confirm that he has
15 | changed his mind and would like to enter this plea agreement
16 | that he previously rejected.
17 |       THE COURT:  Okay.
18 |       MR. KAUSHAL:  Sir, I'm holding in my hands a Guilty
19 | Plea and Plea Agreement from Criminal Case No. 1:19-CR-22 that
20 | states on the first page that you are pleading guilty to Count
21 | 1 and 2 of the indictment.
22 |       Sir, is this your signature above the line that says,
23 | Signature Defendant Kevin L. Kirton?
24 |       THE DEFENDANT:  Yes, it is.
25 |       MR. KAUSHAL:  And have you had an opportunity to

1  review this document?

2          THE DEFENDANT:  Yes, I did.

3          MR. KAUSHAL:  And you heard me just describe those

4  prior proceedings; right?

5          THE DEFENDANT:  Yes.

6          MR. KAUSHAL:  And you did say previously that you

7  didn't want to enter into this plea agreement; correct?

8          THE DEFENDANT:  To clarify, when that statement was

9  made a year ago, my specific response was me and my

10 attorney -- I was still trying to understand the charges, and

11 I couldn't yet make a decision on the plea because I didn't

12 understand the charges.

13         MR. KAUSHAL:  Okay.

14         THE DEFENDANT:  So I didn't necessarily reject it,

15 but I didn't get to it yet.

16         MS. STRONGWATER:  Your Honor, there was an attorney

17 issue.  I don't even know if you remember, but I'm replacement

18 counsel.  So it was more of a client-attorney issue.

19         THE COURT:  Who was the previous counsel?

20         MS. STRONGWATER:  Jay Shreenath.

21         THE COURT:  Mr. Kirton, did you have longer hair

22 then?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Okay.  I didn't.  But --

25         THE DEFENDANT:  Yes.

1              THE COURT:  -- mine is about the same.  Thank you.

2              THE DEFENDANT:  Before COVID, yes.

3              MR. KAUSHAL:  And, Mr. Kirton, thank you for

4    providing that clarification.  I just want to confirm that you

5    have reviewed this, and you do want to enter into a guilty

6    plea here today.

7              THE DEFENDANT:  A hundred percent, yes.

8              MR. KAUSHAL:  And this is your attorney to your

9    right?

10             THE DEFENDANT:  Yes.

11             MR. KAUSHAL:  And, ma'am, is this your signature

12   above the line that says, Signature Defendant's Attorney Emily

13   Strongwater?

14             MS. STRONGWATER:  It is.

15             MR. KAUSHAL:  And, your Honor, there's also signature

16   lines on this page 15 of the document.  For myself I've signed

17   this document.  And for my supervisor, Steve McClain, he has

18   electronically signed this document.

19             Sir, turning to page 16 of the document, there's

20   another signature line that says, Signature Defendant Kevin L.

21   Kirton.  Is that your signature above that line?

22             THE DEFENDANT:  Yes, sir.

23             MR. KAUSHAL:  And, finally, on page 17 of the

24   document, ma'am, is this your signature above the line that

25   says, Signature Defendant's Attorney Emily Strongwater?

1          MS. STRONGWATER:  It is.

2          MR. KAUSHAL:  Your Honor, I now tender to the Court

3   the Guilty Plea and Plea Agreement.

4          THE COURT:  Thank you.  So, Mr. Kirton, I'm not

5   sure -- I can't remember a year ago specifically how far we

6   got into the plea colloquy that I have to engage in with you

7   today.  You know, presumably, we got at least halfway or so in

8   there, so there's going to be some déjà vu today.  There's

9   going to be -- I'm going to have to ask you the same

10  questions, some of which I've already asked you.  So I

11  apologize, but I need the record today to reflect your

12  awareness of certain rights that you have if you enter a plea

13  of guilty today, your awareness of them and that you are

14  voluntarily waiving those rights if you choose to go forward

15  with your plea.

16         Before I ask you any questions, sir, I'm going to ask

17  you to raise your right hand, sir.

18                         KEVIN L. KIRTON,

19         herein, having been first duly sworn, was examined

20  and testified as follows:

21         THE COURT:  All right.  You can put your hand down.

22         Sir, you just took an oath to tell the truth.  Do you

23  understand that the answers that you give to the questions

24  that I'm going to ask you will be subject to penalties of

25  perjury or making a false statement if you do not answer

1   truthfully?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Have you been advised by anyone not to

4   tell the complete truth today?

5            THE DEFENDANT:  No.

6            THE COURT:  How old are you, sir?

7            THE DEFENDANT:  44.

8            THE COURT:  Where were you born?

9            THE DEFENDANT:  Brooklyn, New York.

10           THE COURT:  How far did you go in school?

11           THE DEFENDANT:  College.

12           THE COURT:  You have a college degree?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Growing up in Brooklyn -- I assume you

15  grew up there -- was English your primary language?

16           THE DEFENDANT:  Yes.

17           THE COURT:  And Ms. Strongwater speaks English.  Have

18  you been able to communicate with her in English?

19           THE DEFENDANT:  Yes.

20           THE COURT:  And you acknowledge that your signature

21  on a plea agreement that is written in English, were you able

22  to read and understand the plea agreement?

23           THE DEFENDANT:  Yes, I have.

24           THE COURT:  Prior to coming to court today, have you

25  taken any narcotic, drugs or alcohol or pills or anything, any

1 | other substance which affects your ability to understand what

2 | you're doing today?

3 |       THE DEFENDANT:  No.

4 |       THE COURT:  Have you ever been treated for alcoholism

5 | or narcotic addiction?

6 |       THE DEFENDANT:  No.

7 |       THE COURT:  Have you ever been diagnosed with any

8 | type of mental illness or mental disability?

9 |       THE DEFENDANT:  No.

10 |       THE COURT:  Ms. Strongwater, has your client told you

11 | anything about his mental state or substances that he may have

12 | taken or about anything else that in your opinion would affect

13 | his ability to understand what he's doing today?

14 |       MS. STRONGWATER:  No, your Honor.

15 |       THE COURT:  Do you have any doubt about your client's

16 | competency?

17 |       MS. STRONGWATER:  No, your Honor.

18 |       THE COURT:  Mr. Kirton, by pleading guilty you're

19 | going to give up a number of rights that you have under the

20 | constitution and laws of the United States, so I'm not going

21 | to ask you about those rights.  Do you understand, sir, that

22 | under the constitution and laws of the United States, that you

23 | have the right to plead not guilty and to maintain your plea

24 | of not guilty up to and all the way through a trial by a jury?

25 |       THE DEFENDANT:  Yes, I do.

1          THE COURT:  Do you understand that you're entitled to

2  a speedy and public trial by a jury on the charges contained

3  in the indictment against you or the second superseding

4  indictment against you?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You understand that if a trial happened,

7  that you would have the right to have your attorneys assist

8  you throughout the entirety of the trial?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Do you understand that at trial you would

11  be presumed to be innocent, and the government would have to

12  overcome that presumption, if it could, to prove that you're

13  guilty by competent evidence and that it would have to

14  convince the jury that you were guilty beyond a reasonable

15  doubt?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that at trial you would

18  not have to prove that you're innocent because the burden is

19  always going to be on the government, if it can, to prove that

20  you're guilty beyond a reasonable doubt?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand, sir, that you would be

23  able to subpoena witnesses and compel them to come to court

24  and testify on your behalf?

25          THE DEFENDANT:  Yes.

1        THE COURT:  Do you understand that in the course of

2  the trial that the witnesses for the government have to come

3  to court and testify in your presence?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  Do you understand, sir, that in the

6  course of a trial that your attorney could cross-examine the

7  witnesses that the government calls, she could introduce

8  evidence on your own behalf, she could also object to any of

9  the evidence or testimony that the government might produce?

10        THE DEFENDANT:  Yes.

11        THE COURT:  And while you would have the right to

12  testify, sir, at a trial if you chose to, you would also have

13  the right to remain silent and not to testify.  Do you

14  understand that?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  And if you chose not to testify or to

17  enter any evidence in this case, you understand that that

18  couldn't be held against you?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Do you understand, sir, that you have the

21  right at trial to have the jury render a unanimous verdict,

22  meaning that all the jurors would have to agree that you're

23  guilty before you could be convicted of anything?

24        THE DEFENDANT:  Yes.

25        THE COURT:  If I accept your plea of guilty, do you

1 understand that you will waive your right to trial and all

2 these other rights that we've discussed?

3          THE DEFENDANT:  Yes.

4          THE COURT:  By entering a plea of guilty, sir, do you

5 understand there's not going to be a trial?  I'm simply going

6 to enter a judgment of guilty on the court's record, and then

7 later you're going to be sentenced on the basis of your guilty

8 plea?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And by pleading guilty, do you also

11 understand, sir, that you have to give up your right not to

12 incriminate yourself because you're going to have to answer

13 certain questions about what you did in order that I can be

14 sure that you are, in fact, guilty of the crime or crimes that

15 you're pleading guilty to?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  So once again, sir, are you still willing

18 to waive your rights that I've discussed with you and instead

19 enter this plea of guilty?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  So at this time I'm going to

22 ask Mr. Kaushal, on behalf of the government, to summarize the

23 terms of the plea agreement.  Do you have a copy of it that

24 you can look at, sir?

25          THE DEFENDANT:  Yes.

```
1              THE COURT:  So follow along with him.  He's not going
2    to read everything, but he's going to summarize it.  And at
3    the end of his summary if you have any questions, you can ask
4    me about them.  Okay?  All right, Mr. Kaushal.
5              MR. KAUSHAL:  Thank you, your Honor.
6              On the first page of the plea agreement, the
7    defendant is agreeing that he is pleading guilty because he
8    is, in fact, guilty of the crimes charged in Counts 1 and 2 of
9    the indictment, the second superseding indictment.  Paragraphs
10   2 through 6 -- and that was paragraph 1 of the plea agreement,
11   your Honor.  Paragraphs 2 through 6 covered the defendant's
12   acknowledgment of his rights and his waiver of his rights, and
13   your Honor just covered those rights with him a moment ago.
14             Moving forward to the Acknowledgment of Penalties,
15   paragraph 7 lists out the penalties for both Count 1 and 2 of
16   the indictment.  And, your Honor, I can cover those
17   punishments now if you'd like or I can wait until a later
18   time.
19             THE COURT:  We'll talk about them a little bit later.
20             MR. KAUSHAL:  Thank you, your Honor.
21             Moving forward to page 5 of the document, paragraph
22   11, the government has agreed not to bring further criminal
23   charges against the defendant related to the charges to which
24   he is pleading guilty, and that the defendant understands that
25   this provision does not bar prosecution by any other federal,
```

1  state or local jurisdiction.

2          And in this case -- and the reason why I read that in

3  full, your Honor, is that the defendant has a separate case in

4  the Southern District of Florida that is being resolved

5  separately from this matter with another AUSA down there in

6  that district, and there are, I believe, another defense

7  attorney.  And they are negotiating their own resolution in

8  that matter, and nothing in this case is connected to that

9  case in terms of the resolution that's been negotiated here.

10          THE COURT:  Unless the lawyers and Mr. Kirton in that

11  case agree to that later; right?  They could agree that the

12  sentence there, if there is one, might be affected by what

13  happens here?

14          MR. KAUSHAL:  They certainly could make whatever

15  agreements they would like to make down there, but for

16  purposes of the agreement here, your Honor, the parties are

17  not seeking to affect anything related to that matter, which

18  is later in time than this case.  So the resolution of that

19  will occur after this case as well, your Honor.

20          THE COURT:  Thank you.

21          MR. KAUSHAL:  Turning forward to page 6 of the

22  document and paragraph 14, the government has agreed to

23  recommend that the defendant receive the full amount of

24  acceptance of responsibility that's available pursuant to

25  Section 3E1.1 of the guidelines.  Moving forward again to page

8 of the document, paragraphs 17 and 18, paragraph 17

discusses cooperation in this case, and it highlights that the

defendant has been promised a 5K departure in this case.  And

what that means is that the government will move for a

one-level downward departure under Section 5K1.1 of the

sentencing guidelines, and the provision also notes that the

defendant does understand that the final decision as to what

credit, if any, the defendant should receive will be

determined by the Court and not by the U.S. Attorney's Office

and the prosecution.

Moving forward to paragraph 18, your Honor, the plea

agreement states that the defendant -- that the government

agrees to recommend that the defendant be sentenced at the low

end of the guidelines range.

Paragraph 20 memorializes the defendant's agreement

to pay full restitution.  And paragraphs 21 through 28 discuss

forfeiture and various financial cooperation provisions.  In

this case, there's no specific property identified for

forfeiture.

Moving forward, finally, to page 13 of the document,

paragraph 30 discusses a limited waiver of appeal.  I'm going

to read it and then explain it.

This paragraph states:  Limited Waiver of Appeal.  To

the maximum extent permitted by federal law, the defendant

voluntarily and expressly waives the right to appeal his

1   conviction and sentence and the right to collaterally attack

2   his conviction and sentence in any post-conviction proceeding,

3   including, but not limited to, motions filed pursuant to Title

4   28, United States Code, Section 2255 on any ground, except

5   that the defendant may file a direct appeal of an upward

6   departure or upward variance above the sentencing guideline

7   range as calculated by the District Court.

8           Claims that the defendant's counsel rendered

9   constitutionally ineffective assistance are excepted from this

10  waiver.  The defendant understands that this plea agreement

11  does not limit the government's right to appeal, but if the

12  government initiates a direct appeal of the sentence imposed,

13  the defendant may file a cross-appeal of that same sentence.

14          This provision severely restricts the defendant's

15  appellate rights and essentially waives all of them, except in

16  three narrow circumstances.  The first is if the defendant

17  receives an upward departure or upward variance above the

18  sentencing guideline range as calculated by the District

19  Court.  The second is if the defendant raises a claim of

20  constitutionally ineffective assistance.  And, finally, the

21  third is that if the government initiates a direct appeal of

22  the sentence, then the defendant may file a cross-appeal.

23          The defendant, through this paragraph, is waiving all

24  other appellate rights and post-conviction rights under

25  Section 2255 and any others that the defendant may have been

1  entitled to.  This is a complete waiver of all those other

2  rights that the defendant may have.

3          Paragraph 32 is an integration clause that states

4  that there are no other agreements, promises, representations

5  or understandings between the defendant and the government.

6          THE COURT:  All right.  Thank you, sir.

7          All right.  Mr. Kirton, the prosecutor summarized the

8  plea agreement that you and the government have entered into.

9  Do you agree with his description of the plea agreement?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Do you understand it?

12          THE DEFENDANT:  Yes, I do.

13          THE COURT:  I don't think he highlighted this, but

14  there is a provision in there that says this, and it's

15  essentially this -- a lot of "this" there.  But the terms of

16  the plea agreement are mere recommendations to the Court that

17  I can reject those recommendations without permitting you to

18  withdraw your plea of guilty and impose a sentence that is

19  more severe than you might expect.  Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Is this the only agreement you've entered

22  into with the government?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Has anyone made any promises other than

25  those that are included in the written plea agreement in order

1  to get you to plead guilty?

2          THE DEFENDANT:  No.

3          THE COURT:  Has anyone made any promises to what your

4  actual sentence will be?

5          THE DEFENDANT:  No.

6          THE COURT:  Other than the plea agreement, has anyone

7  threatened you or forced you to plead guilty or told you that

8  if you don't plead guilty, that further charges will be

9  brought against you or that some other adverse action will be

10  taken against you?

11          THE DEFENDANT:  No.

12          THE COURT:  Ms. Strongwater, have you advised your

13  client concerning the legality of any statements or other

14  evidence which the government might have against him?

15          MS. STRONGWATER:  I have, your Honor.

16          THE COURT:  Mr. Kaushal, can you verify for the

17  record that the government has provided any and all *Brady*

18  material that it's aware of to the defendant?

19          MR. KAUSHAL:  Yes, your Honor, the government has

20  done so.

21          THE COURT:  Ms. Strongwater, to your knowledge, is

22  your client pleading guilty because of any illegally obtained

23  evidence in the possession of the government?

24          MS. STRONGWATER:  Not to my knowledge.

25          THE COURT:  Have you made any promises to your client

1  as to what his sentence in this case would actually be?

2  MS. STRONGWATER:  I have not.

3  THE COURT:  Do you have any knowledge of any plea

4  agreement or bargain affecting his desire to enter this plea

5  other than the plea agreement itself?

6  MS. STRONGWATER:  No, your Honor.

7  THE COURT:  Do you know of any reason why the Court

8  shouldn't accept your client's plea of guilty?

9  MS. STRONGWATER:  I do not, your Honor.

10  THE COURT:  Have you had sufficient time to discuss

11  the matter fully with Mr. Kirton before coming to court today

12  for him to enter this plea of guilty?

13  MS. STRONGWATER:  I have.

14  THE COURT:  Mr. Kirton, do you believe that you've

15  had sufficient time to think about and discuss this matter

16  fully with your attorney before deciding to enter this guilty

17  plea?

18  THE DEFENDANT:  Yes, sir.

19  THE COURT:  Are you satisfied with Ms. Strongwater's

20  representation of you in this case?

21  THE DEFENDANT:  Yes, sir.

22  THE COURT:  All right.  At this time I'm going to ask

23  Mr. Kaushal, on behalf of the government, to state the

24  elements of the offense or offenses to which you're pleading

25  guilty, and then I'm going to follow up with some questions

1   about that.  So Mr. Kaushal.

2         MR. KAUSHAL:  Thank you, your Honor.

3         The crime of access device fraud in violation of

4   Section 1029 -- Title 18, United States Code, Section

5   1029(a)(3) is -- that's the first count in the indictment,

6   your Honor, and that crime has three elements.  The first is

7   that the defendant needs to have knowingly possessed at least

8   15 unauthorized access devices.

9         The second element is that the defendant needs to

10  have acted with the intent to defraud.  And the third element

11  is that the defendant -- that the actions need to have

12  affected interstate commerce.

13        For Count 2 of the indictment, which charges

14  aggravated identity theft in violation of Title 18, United

15  States Code, Section 1028(A), there are three elements to that

16  offense.  The first is that the defendant needs to have

17  knowingly transferred, possessed or used another person's

18  means of identification.  The second is that the person needs

19  to -- that the defendant needs to have done so without lawful

20  authority.  And the third is the defendant needs to have done

21  so during and in relation to an eligible felony that's alleged

22  in the indictment.  And in this case that eligible felony is

23  the access device fraud count charged in Count 1 of the

24  indictment.

25        THE COURT:  So it's Count 1 and Count 3?

1          MR. KAUSHAL:  Count 1 and Count 2, your Honor.

2          THE COURT:  Count 2.  Excuse me.

3          Mr. Kirton, do you understand the elements of the two

4    charges that the government would have to prove if it was able

5    to or in order to obtain a conviction of you on these two

6    counts if there were to be a trial in this case?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Have you discussed with Ms. Strongwater

9    these two charges in which you're pleading guilty to?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Mr. Kaushal, if you would now state what

12    the evidence or proffer what the evidence would be if the case

13    did go to trial, and then, Mr. Kirton, I will ask you some

14    questions about what the prosecutor says you actually did in

15    this case.

16          MR. KAUSHAL:  Yes, your Honor.  If this case were to

17    proceed to trial, the government would produce witnesses,

18    documents, and undercover video and audio as evidence of the

19    defendant's guilt.  Undercover video or audio recorded by a

20    confidential human source, which I'm going to call a CHS for

21    the purposes of this hearing, agent testimony and CHS

22    testimony would show that in November of 2013 the CHS met

23    with the defendant at the defendant's residence, which was

24    4735 Kent Road in College Park in the Northern District of

25    Georgia.

1        During the meeting the CHS and the defendant

2   discussed the production of fake driver's licenses.   The CHS

3   and the defendant also discussed the defendant's work filing

4   fraudulent tax returns, and they also discussed details about

5   the information technology infrastructure that was used for

6   filing those tax returns.   There was also discussion about how

7   to get money from the IRS through tax refunds.

8        In December of 2013, the CHS met with the defendant

9   again, once again at the defendant's residence.   And before

10  the meeting the agents that were working on the case had

11  provided a new laptop to the CHS to then provide to the

12  defendant.   The CHS provided that laptop to the defendant for

13  the purpose of loading a tax fraud program that the defendant

14  had developed.   And during this meeting the defendant took the

15  laptop and made some of these statements -- made these

16  statements.   The defendant provided an update about fake

17  driver's licenses explaining that he had so far not yet

18  dropped off the materials for those fake driver's licenses.

19       The defendant described a bootleg phone system he had

20  set up on his computer to anonymize phone communications

21  related to his tax fraud scheme.   The defendant discussed

22  methods for filing fraudulent tax returns, and the defendant

23  discussed tax refund fraud and the use of his computer program

24  to commit tax fraud.   And, finally, the defendant described

25  going to multiple ATM machines to withdraw cash from prepaid

1  debit cards that were loaded with fraudulently obtained tax

2  refunds.

3           Later on, in the month of December of 2013, the CHS

4  called the defendant, and they discussed tax fraud and the

5  fake driver's licenses.  And then, finally, in January of

6  2014, the CHS met with the defendant again at the defendant's

7  residence.  And during that meeting the defendant returned

8  the laptop to the CHS with a tax fraud program loaded onto

9  it, and the defendant showed the CHS how to access that

10  program.

11          Based on these interactions, that resulted in the

12  execution of a search warrant at the defendant's residence,

13  and agent testimony would explain that United States Secret

14  Service agents obtained a search warrant for the defendant's

15  residence and that at that residence a significant amount of

16  evidence was found, including, among other things, a digital

17  copy of a fake driver's license in the name of Candace

18  Files -- and that is the CF that is identified in Count 2 of

19  the indictment -- and that there were also during the search

20  discovered dozens of unauthorized debit cards in the names of

21  various individuals, including a debit card in the name of

22  Candace Files that ended in 0511.

23          Information provided from IRS Criminal Investigations

24  and testimony from IRS Criminal Investigations agents would

25  show that IRS Criminal Investigations agents conducted a

1  search of IRS records and determined that there were numerous

2  tax refunds that had been directed to the debit cards that

3  were found in the defendant's home and that a review of IRS

4  records for Candace Files and of bank records related to

5  Candace Files and the debit card that was found in the

6  defendant's home, revealed that a fraudulent tax return was

7  filed in Ms. Files's name for tax years 2011 and 2012, and,

8  also, a Georgia Department of Revenue refund was issued to the

9  debit card that was found in the defendant's home.

10         The IRS CI agents later located and identified

11  Candace Files, and they interviewed her.  And she said that

12  she did not authorize the activities conducted in her name.

13  And as such, the government would also call Ms. Files to

14  testify about how she was victimized in this case.

15         Bank records would further show, your Honor, that the

16  transactions identified in Counts 6 through 17 of the

17  indictment were executed as described in those transactions.

18         And taking all this together, your Honor, the

19  government submits that the defendant is guilty beyond a

20  reasonable doubt of both Count 1 and Count 2 of the

21  indictment.

22         THE COURT:  So is Ms. Files the victim of that

23  allegation or is the government the victim?

24         MR. KAUSHAL:  Well, your Honor, they're both victims.

25  The government is victimized because money is being taken out

1  of tax coffers -- and I should clarify, your Honor, in the

2  instance of Ms. Files, fraudulent tax returns were filed, but

3  no refunds were issued.  But there was an issue -- there was a

4  refund issued by the Georgia Department of Revenue.  And then

5  the IRS agents also found other instances where false returns

6  were filed, and there was some money that went out onto some

7  of the cards.

8          So that money is money that victimizes the

9  government, but there is also the victimization of having your

10  identity used, which can turn into -- it can have

11  repercussions where, for example, if a tax return is filed in

12  your name, in an individual's name and they are receiving

13  Social Security and then a tax return is filed in their name,

14  in that instance their social security might be frozen as a

15  result of a tax return indicating that they are working.

16          So I've seen that happen before in prior cases.  I'm

17  not talking specifically about this case, but that is a

18  scenario in which the person whose identity is used is a

19  victim as well.

20          THE COURT:  Ms. Strongwater, do you have any material

21  disagreement with Mr. Kaushal's summary of the evidence that

22  the government could prove if the case went to trial?

23          MS. STRONGWATER:  No, your Honor, now that he

24  clarified in terms of the victimization he is -- social

25  security, that did -- as far as I know, none of that happened

1  in this case, but I'm pretty sure that he made that clear for

2  the record.

3       THE COURT:  Okay.  Thank you.

4       Mr. Kirton, do you agree with the prosecutor's

5  summary of what you did in this case as related to Count 1 and

6  Count 2 of the indictment?

7       THE DEFENDANT:  Yes, I do.

8       THE COURT:  Are you, in fact, guilty of Count 1 where

9  you were charged with access device fraud and Count 2 where

10 you were charged with aggravated identity theft as it relates

11 to the specific victims listed?

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  All right.  Based on the elements of

14 these two offenses that would have to be proven by the

15 government if the case went to trial, the evidence as

16 proffered by the government that it could elicit and provide

17 to the Court if it were required to do so, the defendant's

18 agreement that these facts are, in fact, true, the Court finds

19 that there is a factual basis for the defendant to enter his

20 guilty plea to Counts 1 and 2 of the superseding indictment.

21      Mr. Kaushal, if you would now state the maximum

22 penalties and fines that could be imposed, as well as any

23 mandatory minimums that might apply.

24      MR. KAUSHAL:  Yes, your Honor.  The crime of access

25 device fraud in violation of Title 18, United States Code,

1   Section 1029(a)(3) has a maximum term of imprisonment of ten

2   years.  There is no mandatory minimum term of imprisonment.  A

3   term of supervised release of up to three years may be

4   imposed.  There is a maximum fine of $250,000 that can be made

5   due and payable immediately.  There is full restitution that

6   can be made due and payable immediately to all victims of the

7   offense and relevant conduct.

8            There is a mandatory special assessment of a hundred

9   dollars that can be made due and payable immediately, and

10  there's forfeiture of any and all proceeds from the commission

11  of the offense, any and all property used or intended to be

12  used to facilitate the offense, and any property involved in

13  the offense.  In this case there's no specific property

14  identified for forfeiture.

15           And turning to the second crime that the defendant is

16  pleading guilty to, which is aggravated identity theft in

17  violation of Title 18, United States Code, Section 1028(A),

18  there is a maximum term of imprisonment of two years.  There

19  is a mandatory minimum term of imprisonment of two years, and

20  any term of incarceration imposed on this count must be served

21  consecutively to any other term of imprisonment.

22           A term of supervised release of up to one year may be

23  imposed, and full restitution can be made due and payable

24  immediately to all victims of the offense and relevant

25  conduct.  And, finally, your Honor, there is a mandatory

1  special assessment of a hundred dollars that can be made due

2  and payable immediately.

3          THE COURT:  Is a supervised release that's imposed,

4  if any, is it also required to be consecutive?

5          MR. KAUSHAL:  No, your Honor, it is not.

6          THE COURT:  Be concurrent with the other supervised

7  release?

8          MR. KAUSHAL:  Yes, it may be, your Honor.

9          THE COURT:  Ms. Strongwater, do you agree with the

10  prosecutor's summary of what the penalties in this case would

11  be?

12          MS. STRONGWATER:  I do, your Honor.

13          THE COURT:  Mr. Kirton, do you understand the maximum

14  and minimum penalties that may be imposed as a result of your

15  guilty plea?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you understand, sir, that the

18  sentencing -- the United States Sentencing Commission has

19  issued guidelines which judges are obligated to consider in

20  determining a sentence in any criminal case?  And this is the

21  book that provides all the rules that apply, and all the rules

22  in this book don't apply to your case.  This is all cases.

23  But do you understand that I will be required to determine

24  what the guidelines suggest your sentence should be?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  Have you and your attorney talked about

2    how the guidelines might apply in your case?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you understand that it's not possible

5    to determine the exact guideline until after the presentence

6    report has been compiled and completed by Probation and you

7    and the government have had an opportunity to challenge the

8    facts reported by the probation officer?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you understand, sir, that after it has

11   been determined what guidelines apply and suggest your

12   sentence should be, that the Court has the authority to impose

13   a sentence that is more severe or less severe than that

14   suggested by the guidelines?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Do you also understand that as a part of

17   your plea agreement, with three narrow exceptions, that you're

18   going to be giving up your right to appeal the sentence that

19   you would receive in this case?

20         THE DEFENDANT:  A hundred percent.

21         THE COURT:  As Mr. Kaushal indicated, unless I

22   sentence you to a sentence which is above the guidelines

23   suggested range or unless the government decides to appeal or

24   unless there is a claim by you that your attorney rendered

25   constitutionally ineffective assistance to you, then you would

be giving up your right to appeal, which means that you will
be bound by my decision as to what your sentence would be.  Do
you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  You also would be giving up your right to
collaterally attack your sentence in any post-conviction
proceeding.  In other words, after your conviction, you will
never be able to file a complaint, a separate legal action
that would say or claim that there was some defect in the
prosecution of your case that justifies your release from your
plea or your release from your sentence.  Do you understand
that?

THE DEFENDANT:  Yes, sir.

THE COURT:  So other than that plea agreement that we
talked about, has anyone made any promises to you to get you
to give up your right to appeal that you might have in this
case?

THE DEFENDANT:  No.

THE COURT:  Ms. Strongwater, have you and your client
discussed the appeal waiver and determined that it's in his
best interest to agree to that waiver in order to obtain the
government's consent or assent to the plea agreement?

MS. STRONGWATER:  We have, your Honor.

THE COURT:  Mr. Kirton, have you ever been convicted
of a crime before in state court anywhere?

1          THE DEFENDANT:  No -- wait -- no.

2          THE COURT:  Have you ever been to prison?

3          THE DEFENDANT:  Oh, wait.  Sorry.  First-time

4   offender.

5          THE COURT:  Okay.  You didn't go to prison on that

6   sentence --

7          THE DEFENDANT:  No, I have not.

8          THE COURT:  In state court, in Georgia at least, and

9   in most states, I think, if you go to prison and a judge gives

10  you a sentence, you might be released early on parole.

11  There's a parole board or parole official that has the

12  authority to adjust sentences to make sure they're fair across

13  the state or jurisdiction.

14          I bring this up to make sure you understand that

15  there is no federal parole.  So if you go to prison, you

16  understand that you will not be released early on parole?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  After you are released, if you go to

19  prison, do you understand that you can be placed on supervised

20  release, and there will be certain conditions that will be

21  imposed upon you, things that you are told that you can't do,

22  things that you're told that you must do, and if you fail to

23  do those things or not do those things, as the case may be,

24  then you could be found in violation of your supervised

25  release and sent back to prison for the balance of your

1  supervised release.  Do you understand that?

2          THE DEFENDANT:  Okay.  I got it.  Okay.  Yes.  I see.

3          THE COURT:  You understand?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  Do you understand that you're

6  pleading guilty to two counts or two different crimes and that

7  as a result of that, you will be ordered to pay a one hundred

8  dollar special assessment for each of those two offenses?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you also understand that you may be

11  ordered to make restitution to any victim in this case?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Were you on first-offender in Georgia?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Did you successfully complete that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Do you understand that the offense to

18  which you're pleading guilty to is a felony and that if your

19  plea is accepted, that you will be adjudged guilty of that

20  offense and that that adjudication may deprive you of valuable

21  civil rights, such as the right to vote, the right to hold

22  public office, the right to serve on a jury, and the right to

23  possess any kind of firearm?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  I don't believe that your first offender

1   sentence will be treated for federal sentencing purposes as a

2   no conviction.  I think it will be treated as a conviction for

3   purposes of calculating your criminal record.  Do you

4   understand that?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Doesn't make sense to a lot of people

7   because Georgia would say you haven't been convicted of a

8   crime.  But to obtain a first-offender sentence, you did

9   plead guilty or you could not have received it, and so

10  federal procedure will view that as a criminal offense for

11  purposes of calculating your criminal history.  Do you

12  understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Finally, sir, the government has agreed

15  to make certain recommendations as a part of your plea

16  agreement about what your sentence will be.  Do you understand

17  that if the Court does not accept those sentencing

18  recommendations and sentences you to something that may be

19  more severe than you were anticipating or more severe than

20  what the government was recommending, that you'll still be

21  bound by your plea, and you'll have no right to withdraw your

22  guilty plea?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  So is there anything that I've said

25  today, anything you didn't understand that you would like to

1    follow up with a question now?

2              THE DEFENDANT:  I understand in total.

3              THE COURT:  Ms. Strongwater, is there anything

4    else you wish to address on behalf of your client on the

5    record?

6              MS. STRONGWATER:  Not today, your Honor.

7              THE COURT:  Mr. Kaushal, any other inquiries you

8    believe I need to make of the defendant?

9              MR. KAUSHAL:  No, your Honor.  Thank you.

10             THE COURT:  Thank you, sir.

11             So at this time I find that the defendant understands

12   the charges and the consequences of his guilty plea to Counts

13   1 and 2 of the superseding indictment.  I've had a chance to

14   observe Mr. Kirton during our colloquy today, and he doesn't

15   appear to be under the influence of any substance or suffer

16   from any disability that would affect his judgment in entering

17   into this plea.

18             The Court finds that the offer of the plea of guilty

19   of the defendant, Kevin Kirton, to Counts 1 and 2 of the

20   superseding indictment is free of any coercive influence of

21   any kind, that it has a factual basis, that it's voluntarily

22   made by the defendant with full knowledge of the charge

23   against him and the consequence of his plea of guilty.

24             I find that the defendant is competent to understand

25   our proceedings today and to enter a knowing plea of guilty.

1   I further find that there have been no promises of any kind

2   made to Mr. Kirton other than those that are included in the

3   plea agreement that we've talked about.

4          So it's hereby ordered that the defendant's plea of

5   guilty to Counts 1 and 2 of the superseding indictment in Case

6   No. 19-CR-22, Northern District of Georgia, Atlanta Division,

7   is hereby entered and accepted, and you are adjudged guilty of

8   those two offenses.

9          All right.  Ms. Lee, if you'll give us a date for

10  sentencing.

11         COURTROOM DEPUTY:  September 22nd at 9:30 a.m.

12         THE COURT:  All right.  Mr. Kirton, you will remain

13  in custody until that time.  You'll be contacted by Probation

14  through your lawyer for purposes of interviewing you about

15  what happened in this case.  You'll have an opportunity to

16  communicate to Probation, who will communicate to me any facts

17  that might be mitigating as far as the crime that you have now

18  admitted that you committed.

19         You will also have a chance to talk with me when we

20  have the sentencing.  Your lawyer can make an argument.

21  You'll be able to make a statement if you wish.  You'll be

22  able to call witnesses if you want or you can have them submit

23  letters on your behalf or you can do both of those things.  If

24  there are any material -- any disagreements between the

25  government and the defendant, you, about any facts that are

1  important for you to calculate in the guidelines or that might

2  go to mitigation of your involvement in this, then we'll

3  resolve them that day.  The government would have to prove any

4  of the facts that y'all disagree on by a preponderance of the

5  evidence.  And so we would -- I would entertain witnesses on

6  those points.

7         Your lawyer can also file with the court a sentencing

8  memorandum where she can make arguments about what the

9  guidelines ought to be if y'all disagree as to that, no matter

10  what the guidelines are, what your sentence ought to be.

11         Have any questions for me, sir?

12         THE DEFENDANT:  No, sir.

13         THE COURT:  Okay.  Have you been vaccinated yet?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  Okay.  Fully?

16         THE DEFENDANT:  Fully.

17         THE COURT:  Okay.  All right.  Don't know exactly

18  what will happen in this case, but, you know, with the

19  possibility of a prison sentence, I just want to make sure

20  you've had that opportunity if you wish to take advantage of

21  it.

22         All right.  Thank you, sir.  We'll see you in

23  September.

24         THE DEFENDANT:  Thank you.

25         COURTROOM SECURITY OFFICER:  All rise.

1          (Whereupon, the proceedings were adjourned at 4:38

2  p.m.)

3                          -   -   -

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    REPORTERS CERTIFICATE

2

3

4          I, Wynette C. Blathers, Official Court Reporter for

5    the United States District Court for the Northern District of

6    Georgia, with offices at Atlanta, do hereby certify:

7          That I reported on the Stenograph machine the

8    proceedings held in open court on June 17, 2021, in the matter

9    of UNITED STATES OF AMERICA v. KEVIN L. KIRTON, Case No.

10   1:19-CR-00022-WMR-CCB-1; that said proceedings in connection

11   with the hearing were reduced to typewritten form by me; and

12   that the foregoing transcript (Pages 1 through 36) is a true

13   and accurate record of the proceedings.

14         This the 18th day of September, 2021.

15

16

17

18                              _____
                           /s/ Wynette C. Blathers, RMR, CRR
19                              Official Court Reporter

20

21

22

23

24

25