IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **United States of America** | Criminal Action No. |
| v. | 1:19-CR-022-WMR |
| **Kevin L. Kirton** | |

### Sentencing Memorandum

The United States of America, by Kurt R. Erskine, United States Attorney, and Samir Kaushal, Assistant United States Attorney for the Northern District of Georgia, files this Sentencing Memorandum to address defendant Kevin L. Kirton's objections to the United States Sentencing Guidelines ("USSG") calculation in the Presentence Investigation Report ("PSR"). Kirton's objections should be overruled.

1. **The loss amount is greater than $550,000, but less than $1,500,000.**

Kirton objected to the loss amount calculation in the PSR—an intended loss of $956,868—but has not yet explained the objection. (*See* PSR ¶ 52 ("Mr. Kirton objects to the intended loss amount [and] [t]he basis for this objection will be outlined in the sentencing memorandum.").) The basis for the intended loss identified in the PSR is straightforward. On January 22, 2014, law enforcement executed a search warrant on Kirton's residence and found over 500 prepaid debit

cards. (PSR ¶ 42.) Those debit cards were funded with fraudulent federal and state income tax refunds. (*Id.*) The debit cards were tied to fraudulent federal income tax filings that sought over $900,000 in refunds, resulting in refunds totaling over $600,000 being issued. *Id.* If needed, the United States will present testimony at sentencing that further explains the loss amount calculation listed in the PSR.

### 2. Kirton should receive a two-level enhancement under USSG § 2B1.1(b)(10)(C) because his offenses involved sophisticated means.

Kirton objected to the application of a two-level enhancement under USSG § 2B1.1(b)(10)(C).[1] His objection should be overruled. "An offense is sophisticated if it involves 'especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense.'" *United States v. Wheeler*, 16 F.4th 805, 830 (11th Cir. 2021) (quoting USSG § 2B1.1, app. n. 9(B)). "[A] sophisticated-means

---

[1] Section 2B1.1(b)(10) states:

(10) If (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

enhancement can be applied when some—but not all—aspects of a scheme are sophisticated." *Wheeler*, 16 F. 4th at 830.

Kirton's conduct was highly sophisticated in both execution and concealment. On execution, he "created and maintained a computer application [that] was utilized to file fraudulent federal income tax returns with the IRS in the names of stolen identities." (PSR ¶¶ 13, 16.) The tax preparation program automated stolen identity refund fraud, storing stolen identities and permitting users to remotely login to prepare fraudulent tax returns. (*Id.* ¶ 17.) And for concealment Kirton "create[d] ghost [Internet Protocol] addresses" so "the IRS could not trace [a] fraudulent tax return back to one particular origination point." (*Id.* ¶ 20.)

Indeed, Kirton's own words describing his conduct show the sophistication. He described his tax preparation program as follows: "Application Kindaloud and Burstlock was created in 2011/March to foster a workflow to enable users to file income taxes keeping track of various steps throughout the process." (*Id.* ¶ 39 (internal quotation marks omitted).) Kirton also described to agents an online, internet-based "phone system" that he could use to communicate with other criminals "without having to worry about what they said during their conversations." (*Id.* ¶ 40.) In other words, Kirton set up a phone system that he believed would not be susceptible to wiretaps. These actions show sophistication in the execution and the concealment of

the offense. *See, e.g.*, *United States v. Cabrera*, 635 F. App'x 801, 808 (11th Cir. 2015) (applying enhancement where defendant filed fraudulent returns "using an obscure tax form," "rout[ed] those forms through stolen IP addresses," and "stash[ed] the proceeds in fake companies"); *United States v. Decoste*, 692 F. App'x 557, 560 (11th Cir. 2017) (applying enhancement where defendant, *inter alia*, "filed tax returns on different computers containing software that hid the sender's internet protocol address" and "transferred the refunds to prepaid debit cards").

> 3. **Kirton should receive a two-level enhancement under USSG § 2B1.1(b)(11) because his offense involved possession of an authentication feature and production of an unauthorized access device and authentication feature.**

Kirton objected to the application of USSG § 2B1.1(b)(11)(C).[2] Because he pleaded guilty to aggravated identity theft he is correct

---

[2] Section 2B1.1(b)(11) states:

(11) If the offense involved (A) the possession or use of any (i) device-making equipment, or (ii) authentication feature; (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature; or (C)(i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, or (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, increase by 2

4

that the enhancement should not be applied if it is based solely on the "transfer, possession, or use of a means of identification." USSG § 2B1.6, cmt. n.2; *United States v. Devlin*, 769 F. App'x 709, 713–14 (11th Cir. 2019). This said, other enhancements under § 2B1.1(b)(11), such as production of unauthorized access devices and possession of an authentication feature, may be applied even if the defendant is convicted of aggravated identity theft. *See id.* at 714; *United States v. Stuart*, 793 F. App'x 872, 875 (11th Cir. 2019) (affirming enhancement where defendants used "stolen PII to obtain unauthorized credit cards by applying for them in their victims' names or in their own names— that is, by causing or inducing an innocent third party to create the fraudulent device at the defendant's behest").

The two-level enhancement under USSG § 2B1.1(b)(11) applies because Kirton possessed authentication features, holograms and watermarks in fake driver's licenses, *see id.* § 2B1.1(b)(11)(A)(ii), which necessarily had to have been produced as part of the scheme, *see id.* § 2B1.1(b)(11)(B)(ii), and because he caused prepaid debit cards to be issued in the names of victims, *see id.*

First, Kirton's offenses involved the production and possession of authentication features. *See id.* § 2B1.1(b)(11)(A)(ii) and (B)(ii). "The

---

levels. If the resulting offense level is less than level 12, increase to level 12.

term 'authentication feature' means any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified." 18 U.S.C. § 1028(d)(1); USSG § 2B1.1 app. n.10(A). Here, Kirton had fake driver's licenses with his own photo that contained holograms and watermarks that constitute authentication features. (*See* PSR ¶ 38 (noting that dozens of counterfeit driver's licenses were found in Kirton's residence).)

Sample Fake Driver's Licenses




Second, Kirton had dozens of prepaid debit cards in victims' names in his home. *Id.* ¶¶ 38, 42. Those cards were access devices that were produced as part of Kirton's scheme. *Stuart*, 793 F. App'x at 875. Therefore, he should receive the enhancement for this reason as well. USSG 2B1.1(b)(11)(B)(ii).

## Conclusion

For the reasons stated above and others that will be presented at the Sentencing Hearing, Kirton's objections to the PSR should be overruled.

    Respectfully submitted,

    KURT R. ERSKINE
    *United States Attorney*

/s/ SAMIR KAUSHAL
    *Assistant United States Attorney*
    Georgia Bar No. 935285
    Samir.Kaushal@usdoj.gov

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

                              Emily Strongwater
                              *Attorney for Kevin L. Kirton*

January 24, 2022

                              /s/ SAMIR KAUSHAL
                              SAMIR KAUSHAL
                              *Assistant United States Attorney*